The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, this is Judge Reyna. Judge Bison is also on the panel. Due to unforeseen circumstances, we have two judges sitting on the panel this morning, myself and Judge Bison, and the participate in the final deliberations and decision. This case is Conversion Wireless Licensing v. Apple Inc., 2019-2039. Mr. Solem, you're arguing on behalf of Conversion, I understand. This is Mark Spencer. Mark, yes, Mr. Spencer, sorry. Okay, and you're reserving four minutes for rebuttal? Yes, Your Honor. Okay, and Mr. Lee, you're arguing on behalf of Apple? I am, Your Honor. Okay, all right, well, let's let's go ahead and get started, and Mr. Spencer, you're up. Thank you very much, Your Honor, and may it please the court. The district court's finding of unenforceability should be reversed because the district court failed to require, and the record does not support, a finding by clear and convincing evidence that Nokia or Conversion obtained any benefits as a result of Nokia's late disclosure. Apple was required to prove by clear and district court could not make this finding, and instead found at Appendix 43 that Apple was not required even to connect Nokia's non-disclosure with the inequitable benefit, holding that such but-for proof is not required. But that is exactly... Mr. Spencer, let me ask you a question at this particular point, now that you use the phrase but-for. It seems to me that your argument is that we should import Theracents, the but-for materiality standard to be applied in Theracents, but yet I don't... I'm not clear as to why you think it should apply, and I guess that arises out of a more deeper question that I want to ask you. What, in your view, is a meaningful difference in this particular case between unenforceability under Theracents, the atomic bomb, and unenforceability in implied waiver? Thank you, Your Honor. So, first, the reason that I think Theracents should apply is because that's what this court held at page 1368, because implied waiver, like the doctrine of an inequitable conduct discussed in Theracents, may render an entire patent unenforceable. The doctrine should only be applied in instances where the misconduct resulted in an unfair benefit. It is not sufficient for there to be any misconduct unrelated to a benefit. It has to be material. That's what the Theracents en banc court held post Qualcomm, and in this case, Core Wireless, this panel, Judge Bryson writing found that Theracents controlled. In terms of whether there's a meaningful difference between inequitable conduct, I do not think that there is a meaningful difference between the so-called atomic bomb unenforceability of the entire patent as to the world versus unenforceability of the entire patent as to a standard. The remedy that goes to the remedy, the remedy does have to be tailored, but this is an equitable doctrine. Theracents specifically held that equitable considerations require but for materiality and clear and convincing evidence. This court adopted and applied the Theracents standard and its remand instructions, and the district court did not apply those and was unable to because the record does not support it. Mr. Fenster, this is Judge Bryson. Let me just quickly ask you a question. I will question to see if we can agree as to the underlying facts here on which I think there's some murkiness, at least in the briefs. I take it your position is that a mobile station can operate consistently with the GPRS standard even if the mobile station is only capable of the two TAV option, and it is not required also to have the single TAV option that's described in the 151 patent, and that is, I take it, regardless of how the base station is configured. Is that right? That's exactly right. The mobile station, the standard specifically says that when one or two slots are allowed, the mobile station may choose to be the one that makes the choice, and Judge Cousins' finding that, and this court specifically found that those two options were made optional by the standard. The district court made the finding that the base station requires the mobile stations to operate in both modes, but that was clearly erroneous and just confused the three different timing advance modes. There's continuous initial and on-demand, and with the two different options, which are both within the continuous. Okay, I think for purposes of our discussion, it is the most helpful to me if we refer to the three modes, continuous initial and on-demand as modes, and the two options for the continuous mode as being single TAV and the two TAV as options, so that we don't end up mixing the two together. Perfect. Okay, so yeah, I will of course want to hear from Apple as to whether they disagree with anything you've just said about the options, but we'll get to Apple when they're up. Thank you. Thank you. So not only did the court fail to require any proof connecting the benefit of the late disclosure, the benefits to the late disclosure, but it also failed to apply the clear and convincing evidence standard. It did not even indicate that it was applying the clear and convincing evidence standard. The district court's finding at appendix 43 is only that Dr. Walker's testimony suggests that Nokia, had Nokia disclosed its IPR, there was a reasonable possibility that the 151 would not have been incorporated into the standard. Mr. Fenster, you're sort of at least for me. Can you maybe raise your voice or get closer to the phone or whatever? Yeah, thank you. Thank you. That's better. So the district court only found that the testimony suggests a reasonable possibility that the 151 would not have been incorporated into the standard, and that is the critical finding that it must have found to show materiality. That does not meet this court's standard for clear and convincing evidence. This court held in their sense to meet the clear and convincing evidence standard, the district court had to find that the 151 solution being included in the standard as a result of non-disclosure must be the single most reasonable inference able to be drawn from the evidence. Indeed, the evidence must be sufficient to require that finding, and if there are multiple inferences available from the evidence, clear and convincing evidence, any district court decision finding so is clear error. Here, not only was the evidence susceptible to other reasonable inferences, the evidence strongly suggests that non-disclosure was not relevant to Etsy, the standards body. Dr. Walker testified, this is at appendix 970 at page 1420 of the trial transcript, that Etsy chooses the technically best solution regardless of IPR, intellectual property rights, and that IPR would only be considered if there were two technically equivalent solutions, one of which had IPR and the other was IPR free. There was no evidence that that narrow circumstance was met, and Dr. Walker critically admitted that he had no evidence that Etsy would have chosen another standard but for Nokia's untimely disclosure of the 151 patent that's at appendix 975. Mr. Fester, could you address the Qualcomm case? In your brief, you distinguished Qualcomm, I think, on two grounds. One is that it's pre-Theracense, and two, that it is, in your view, an egregious misconduct case. Assuming that we don't conclude that it is necessarily in the egregious misconduct category, how do you deal with Qualcomm, which did not seem to discuss causation at all? Or do you think it did, implicitly at least? I think it did implicitly. So first, it did involve affirmative egregious misconduct. There was evidence that Qualcomm hid evidence, lied to the court, knowingly attempted to orchestrate a plan, six attorneys got referred to the bar. This was a very different case. But there, it did impliedly also find causation, because their goal of the standards organization was to adopt a solution completely free of intellectual property, which is very different than Etsy. The evidence was that the standards body was considering NAIP because its goal was a royalty-free baseline. That's at Qualcomm at 548, 5F3, 1012, Note 2. Here, the evidence was that Etsy did not consider intellectual property. Its only goal was to avoid unavailable IPR, i.e., IPR that was not available on FRAN terms. And because it's undisputed that Nokia had made a blanket FRAN commitment, and Dr. Walker's testimony, Etsy would not have considered it here, whereas in Qualcomm, the evidence was that it was material because it deprived Ford, the body, of the opportunity to choose a loyalty-free option. Now, that raises for me a second issue, which is, in your brief, you cite various items, including, at several points, expert reports. Now, I had a hard time figuring out how much of that is actually in the record that was usable by the district court. Can you help me on that? What is, of the various pieces of evidence going to what Etsy considered and what Etsy was focused on, the argument you just made, how much of that, what in particular of that, is in the record and what is not? I take it that the expert reports are not in the record. The expert reports are not, Your Honor, but the testimony of Dr. Walker specifically is. Right. Walker, yeah, I could see that. Anything else that was cited in your brief that actually isn't in the record as such, besides the expert reports? I'm not sure, as a blanket, the primary evidence that we are relying is clearly in the record, which is Dr. Walker's testimony at Appendix 973, page 1420. And also, I take it, the Etsy standards? And the Etsy standards are also in the record, that's correct. Okay. And the Etsy standards, yes, Your Honor. All right. Okay, I think we're out of time. I heard the buzzer goes off. We'll allow you four minutes of your time to respond. Thank you, Your Honor. Yes, let's hear from Mr. Lee. Thank you, Your Honor. May it please the court, my name is Bill Lee, and together with my partners, Richard O'Neill and Tim Shred, I represent Apple. I'm standing in for Joe Mueller, who tried the case before the District Court and argued the first appeal before both of you. Mr. Lee, you had a patent jury trial on East Texas yesterday, and that's the reason I'm his understudy for today. Well, that's fine, Mr. Lee. We're glad to have you. Let me ask you a question now. How would the world have been different had Makiya disclosed the application to the 151 pen in 1998? Your Honor, it would have been different, and the District Court actually found this specifically in several ways. It would have been different because the 151 patent became standard essential. It would have been different because the 151 patent would not have been part of the patent portfolio that was licensed to numerous entities. It would have been different because Conversant could not have called its CEO at the trial to talk about a portfolio license that he believed demonstrated the value of the patent. It would have been different. I'm aware of these points that you're raising, but does it matter that Makiya in 1998 had made a FRAN commitment? Yes. No, it does not, Your Honor, and for reasons that you've already addressed in the panel decision and the decision denying re-hearing on Bonk. As the prior opinions demonstrate, the FRAN commitment and the disclosure commitment are two separate commitments with two different purposes, although they overlap to some degree. If there had been disclosure and the standard had been different, then there would have been no 151 patent or it's essential, and there would have been no basis to license it at all. So the different things that I identified in response to your first question would not have occurred, and that actually brings us, Judge Rainey, to your first question on the causation issue, and I think this is the place where we would suggest a careful reading of Judge Cousin's opinion is important because Mr. Fenster has focused on page A43. That is the paragraph that begins finally, but the heart of the opinion is at A41, and at A41, the district court specifically quoted the panel's opinion requiring this misconduct result in an unfair benefit that the patentee obtained an unjust advantage or an undeserved competitive advantage. So he literally went through what was in the opinion and the mandate. He then specifically found that Nokia and Converse had obtained, and the word was, such an unfair competitive advantage, and then detailed the factual findings, which included that which I just began to catalog. Mr. Lee, the problem that I have is that the district court and then you in your brief have argued that the but-for standard does not apply, and so I'm unclear as to what standard of causation you think is applicable. Your Honor, thank you for the question because I think it's an important one. The reason that the but-for causation quote is in the final paragraph on page A43 is because the district court was addressing a specific argument made by Converse, and that specific argument was that in addition to having the unfair competitive advantage or unjust benefit result from the misconduct, there was an additional requirement, and this is very clear at the first page of the reply memo. Their but-for standard requires that we demonstrate that but for the misconduct, SC would not have adopted the 151 patent technology. So what Judge Pages earlier, he has articulated the court's mandate. He has applied it. He's found the fact. He then, in the next two pages, is addressing the specific arguments made by Converse, and the argument on but-for causation was not that there was no causation requirement because he had just applied a causation requirement two pages earlier. He was rejecting the proposition that we were also required to establish conclusively that SC would not have adopted the 151 patent technology into the standard. That is something very close to the detrimental reliance argument that the panel has rejected previously. It is very close to the detrimental reliance argument that was made in Qualcomm, where the argument was made that Broadcom had to they would have acted differently. So I think this is where. But what I'm not hearing is exactly what is your causation test, if you have one, or are you simply saying that the breach of the duty of disclosure was in and of itself sufficient to justify a remedy? No, I would not go that far. I think the test that was articulated in the decision, which is the patentee's misconduct must result in an unfair benefit, or the patentee must obtain an unjust advantage. And the unfair benefit, I take it, flows from the fact that Etsy ultimately adopted something that at least incorporated in part the 151 patent? Because all the benefits flow from that, right? Without Etsy having adopted something that more or less incorporated the 151 patent, then there would have been none of the other benefits would apply, right? Yes. Yeah. So that question is, let me try to get at this. Let me ask you this question. Suppose that the the patentee, Nokia at that time, did not disclose as it was required to do the existence of its IP. But it so happened that Etsy already knew about that, and went ahead with the standard that it ultimately adopted. Would you think that there would be a remedy available in that case? Your Honor, two things. One is, that's not the facts of our case. I understand. That's why I'm trying to get at the hypothetical in order to see what your test is. But if it were, if I were to take the test I tried to describe, which is resulted in or obtained from, you would have, there would be a question on the facts of whether it in fact resulted from or was obtained by. And in fact, Your Honor, that's what I'm trying to understand is, do you think on those facts, there would be any result flowing from the non-disclosure since Etsy would already have known about the patent? I think that if the specific facts were that Etsy knew about the patent and the patent application, that would be very hard to make an argument that it resulted from. On the other hand, if it were slightly different, which is Etsy knew that Nokia was doing work in this arena, but didn't know about the patent application and the patent application had not been disclosed, which the obligation under 4.1 second sentence would require, then it would result from. And I think, aren't you really saying then that, that if Etsy would have done something other than what it did, had it known about the patent, then, then there's causation, but otherwise not? No, Your Honor, I think that's too narrow. And I think that Qualcomm would not allow us to articulate something that narrowly. And I think the panel's decision, when you distinguish equitable estoppel on a detrimental reliance basis, also would suggest it's too narrow. I think a premise of both Qualcomm and the panel's decision is that to the extent there was conduct that occurred years ago, and then a delay of four years in making a disclosure, to require the proponent of implied waiver to demonstrate conclusively that, but for that misconduct, the world would have been different, is basically rewarding the misconduct. That's what Qualcomm is saying. And in this particular instance... Well, Qualcomm, as I understand it, did not really address causation at all. I mean, I, the parties, well, you would know better than I, since I think you argued that case on the part of the winning side. But if I recall, there was nothing in the briefs in Qualcomm, except for one very brief reference to causation in the appellant's brief about saying that because they had agreed to license the property, and because there was no infringement, that there was no possible causation. But that was the only argument I could see in the briefs about causation. So the court didn't address causation, as far as I can see. It wasn't argued to them. Your Honor, I did try that case, and I did argue that case. And the reason I think Mr. Phillips and I argued against each other before the Federal Circuit, the reason that causation was an issue is, it was, at the end of the day, on that record, in much the same as is true on this record, it was clear that what happened was Qualcomm had a patent. It asserted that it was standard essential. It asserted it to get an advantage in the litigation. Now, it turned out not to be true, based upon the jury's finding of no infringement. But they received an advantage during that process. And during the licensing that Your Honor referred to, that was the reason that causation was an issue because no one disputed it. I think that if you take Qualcomm, which Therosense did not overrule, implied waiver is a different doctrine than inequitable conduct. If you take Qualcomm on its face, there cannot be any requirement that you demonstrate that but for the conduct, the standard would be different because in that case, the patent was found to be not essential eventually. But before you got to that point in time, just as here, just as here, you were in a circumstance where there was, to use the panel's phrase, an undue competitive advantage. And to answer a question, Your Honor, and ask Mr. Fentzer, but also to hopefully put a point of emphasis on this, is both experts agreed that for the handset manufacturer, that's Apple, the two or three procedures, or 2A and 2B and 1, were all absolutely mandatory. That's the quote. We're using the word procedures here. If we could stick with the three modes and two options, that would be helpful to me. Yeah, and Your Honor, you'll see that at Appendix 933, their expert conceded that from the phone's perspective, all three were absolutely mandatory. Well, nobody disputes that. And here's where it's the crux of the problem that I have with the positions that you and the appellant have taken. I think you're right. All three modes are essential. And that's what Mr. Wessel, I guess it was, said. And that's certainly true. No one disputes that. The question, though, is, were the two options for the continuous mode, single TAV and two TAV, were those optional? In other words, could Apple simply have used the two TAV modes, and there would be no difference to the operation of its mobile phones in the system? And Your Honor, I think that at page A933 and A659, well, maybe not using the precise phrasing, Your Honor, you'll see that both experts agree that from the mobile handset, from the perspective of the mobile handset manufacturer, that was not an option. You had to have both options, as Your Honor has described it. Let me tell you one other thing in answer to this question. There's a $3 million verdict that is in place. If the district court decision that this patent is not, is unenforceable as a result of the misconduct is not affirmed, then Conversant will have achieved a $3 million verdict for the mobile handset manufacturer based upon assertions in the complaint throughout litigation that the 151 patent was essential. That is not one of the specific benefits that's relied upon by Judge Cousins in his opinion, but it is undoubtedly a specific benefit. Let me, and I hate to spend more of your time on this, although I guess at this time... Mr. Lee is out of time, but Judge Bryson, go ahead. Yeah, I just have this. I have one as well. Because this is something that I think, in thinking about this case, it's important, at least to me, to be sure I'm standing on firm ground. Now, you refer to Appendix 933, and that's the point at which Dr. Wessel says that you understand that from the mobile station, the phone's perspective, it is absolutely mandatory that they perform all three, correct? And he says, yeah, that's right. He's talking, as I understand it at that point, about the three modes, not the two options. Is your understanding of his testimony different from mine? Actually, Your Honor, I think that his, my understanding of his testimony and the other page I cited, page 659, would be that the phone would have to have all three. You're both option 1 and option 2. Remember, we're talking about just the two options, not the three modes. And the answer is yes, Your Honor. I don't think there was any real dispute that you had to have both modes from the handset manufacturer's perspective. Okay, and the other site besides 933 that you gave me was what? It's 659. 659, okay, thank you. And it's described there as three different procedures, Your Honor. Well, again, the procedures, whenever we're talking about three, as I understand it, we are talking about the on-demand, continuous, and initial. And nobody disputes those three are all essential. The question that I'm focused on is whether the two options, one TAV or two TAV, are both essential. And when you point me to evidence that they're talking about the three, they're talking, as I understand it, about the three modes. Do you have a different understanding of that? No, but even for the one mode where you're asking whether they're optional, the question is, are the options of one TAV or two TAV optional? Can you have only one? Your Honor, let me just, and I know I'm way over my time, so let me just give you two quick answers. This is, I'm using up time, so it's not your fault. Your Honor, two quick answers. The first is that I think the fair reading of the testimony is that the option that would be covered by the 151 patent was mandatory. That's what the experts would be asking. And the best indication to you of that, that it's true, if that wasn't true, why did NOCIA sign a declaration of essentiality, make the representations in the complaint, make the representations in the infringement contentions, and offer the testimony trial that it was essential? If it were truly just one mode of, one option of one mode that was not essential, they never could have made those allegations. All right. Thank you. Okay. Thank you, Mr. Lee. Let's go back to Mr. Finster. You have four minutes left, and I'm going to extend that to seven minutes, if you need it. Thank you very much, Your Honor. Can you hear me fine? Yes, I can hear you. Thank you. So, first of all, Judge Bryson, just with respect to your question regarding the three options and the two modes, you were absolutely right that the testimony was clearly and only that the three modes were required, but the expert testimony by both Dr. Wessel and Apple's expert were that the options were optional, and that evidence is cited in our opening brief at pages 54 to 56. Dr. Wessel, at page 56 of our brief, cites at appendix 361, the standard gives the mobile station the choice of whether to use the 151 invention or whether to use two timing advanced values, and in fact, Apple's experts relied on the two TAV solution as a non-infringing alternative. All of the evidence was that the options were optional, and the standard expressly says the MS may choose, the mobile station may choose. So, there is no evidence to support that the two options were required. All of the evidence, and I encourage you to look at pages 54 to 56 of our brief, the two options were optional, and that's why we had to try this case as a source code case. We did not go into trial saying that it was essential and therefore they infringed. We went into trial saying the standard gave them two options, and Apple had the choice to use one or two, and we had to go to the source code, and the source code showed that given the choice, Apple chose one. Of course, Mr. Lee cited the various places in the record where Nokia and or Conversant referred to the 151 process as essential, including Nokia's disclosures to Etsy. So, in the declaration to Etsy, that declaration is only that it may be essential, and it's not that it is essential, and that was a reasonable disclosure by Nokia, a good faith disclosure, that one of the options, if someone practiced one of the options within the standard, that would require a, that would use the 151 patent. It was not a declaration that this is essential under the definition, but that was a good faith disclosure that it may be essential, and... Of course, in your complaint, you say they, you make a more conclusive statement that it is essential. That's true, but Your Honor's question, which I think is the critical one, is was the option required or not, and the reason that that's required, that that question is essential, is because we go back to causation, and whether it's but for causation or not, this court has held that there must be some causal nexus, and I do think it is but for, that's what the Supreme Court has said, from, requires that that's what it means, but however you articulate that standard, there has to be some causal nexus showing that the benefits, which all depend on it being in the standard, even as an option, resulted from the late disclosure, and if there was... Mr. Bessel, let's say that, just assume that we were to reversal, vacate on this in remand with respect to the issue of causation, what would you say that our instructions to the court should be? So, Your Honor, I don't think that a remand is called for. I think a reversal is called for, and the reason for that, Your Honor, is this is a closed record. The Apple actually asked the court to close the record, and the district court found that no additional discovery or findings were necessary. The court gave the district court clear instructions on that record, and the district court just did not apply to either the nexus standard or the... I don't understand. Are you saying that we at the appellate level should decide the causation question as a matter of law? I think that Your Honor should find that the district court... Can I say that? Because it seems to me that your argument that you're making in the briefs and some of the amici make is that this argument is more one of policy as opposed to law. No, I don't think it's policy. I think as a matter of law, this court held in the first wireless at 1368 that because this is an equitable case, causation must be required, and this court can review, does review, the district court's finding for clear error, and here there is a legal error in that it failed to expressly rejected the causal nexus requirement and that the clear and convincing evidence standard was not met, and a careful reading of... Doesn't that mean that the district court should make the causation finding in the first instance? Your Honor, I think that the district court did make those findings at appendix 43. You seem to argue that they did not, that they did not address causation at all. Well, I think that at page 43 of the appendix... I'm there right now. Judge Cousins addressed the only evidence of causation, and what he found is that Dr. Walker's testimony suggests that had Nokia disclosed its IPR, there was a reasonable possibility that the 151 patent would not have been incorporated into the standard. That is, so he did address causation. He could not make the finding required, and this court can, and I believe should, decide that that finding... Let's go back, and I want you to answer my question. If we were to remand on causation, what instruction should we be giving to the district court? Is there clear and convincing evidence that the standard, that the benefit, that the 151 option was included in the standard as a result of Nokia's late disclosure? In other words, that the standard would not have included it, but for the late disclosure? Okay. Judge Bysshe, do you have any other questions? No, I don't. Thank you. Okay. I think we have the case, and we thank the parties for their arguments. Very interesting, and this court now remains in recess. Thank you, Your Honor. Thanks, Your Honor. The Honorable Court is adjourned until tomorrow morning at 10 a.m.